31 P.3d 1164 (2001)
Sarah L. WINTERS, a single person, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a foreign insurance corporation, Respondent.
Kyle A. Perkins, Respondent,
v.
State Farm Mutual Automobile Insurance Company, a foreign corporation authorized to do business within the State of Washington, Appellant.
Nos. 69656-0, 70267-5.
Supreme Court of Washington, En Banc.
Argued March 28, 2001.
Decided October 4, 2001.
*1165 Murray, Dunham & Murray, Ronald Lewis Unger, Tamara Kristine Nelson, Seattle, amicus curiae on behalf of Mutual of Enumclaw Ins. Co., et al.
Bryan Patrick Harnetiaux, Harbaugh & Bloom, Gary Neil Bloom, Debra Leigh Stephens, Spokane, amicus curiae on behalf of Washington State Trial Lawyers Assoc.
Reed, McClure, Pamela A. Okano, Gailann Y. Stardardter, William Robert Hickman, Seattle, for Petitioner.
Staurset, Wickens, Berneburg, Sean P. Wickesn, Tacoma, LePley & Greig, Patrick *1166 H. LePley, Karen Kathryn Koehler, Bellevue, for Respondent.
CHAMBERS, J.
We are asked to determine whether a personal injury protection insurer should pay a pro rata share of the legal cost incurred by the insured when, by pursuing an underinsured motorist tortfeasor, the insured created a fund from which the personal injury protection insurer recoups benefits previously paid on behalf of its insured. We conclude that the efforts of the Petitioners created a common fund from which the PIP insurance company benefited. We therefore affirm the decision of the Court of Appeals and remand for the trial court to determine the pro rata share of expenses due from State Farm Mutual Automobile Insurance Company (State Farm) in both cases.

FACTS

WINTERS
Sara Winters purchased an automobile insurance policy from State Farm. The single policy contained five separate coverages; each was optional and for each she paid a separate premium. These five separate coverages were: "liability" coverage to indemnify her for any damages she might cause to others; "underinsured motorist" coverage (UIM) to protect her for damages she might suffer from an underinsured motorist; "personal injury protection" coverage (PIP) to pay for medical expenses and other out of pocket expenses she might incur arising out of the use of her vehicle; "property damage" coverage for damage to her own property; and "emergency road service" coverage.
In January 1994, Sarah Winters was injured in a car accident after she was hit head-on by Anna Cunningham and then rear-ended by James Edalgo. Cunningham was insured by Leader National Insurance Company (Leader National), and Edalgo was uninsured. After the accident, State Farm paid Winters $8,271.86 under her PIP coverage for the medical expenses and loss of earnings that she incurred. In addition, Winters sued Cunningham. As a result Cunningham's insurer, Leader National, paid Winters $25,000, representing Cunningham's full policy limits. Because Winters did not pursue legal action against Edalgo, State Farm assigned its rights to subrogation for payments made to Winters to an attorney. State Farm's attorney sued and obtained a default judgment against Edalgo for $8,271.86.[1]
Meanwhile, believing that she had not been fully compensated for her injuries, Winters presented a UIM claim to State Farm. The claim was assigned for arbitration. Winters and State Farm agreed that Cunningham and Edalgo were at-fault and that Winters was fault-free. The arbitrator awarded total damages of $40,271, including special medical and wage loss damages of $8,271 and general damages of $32,000.
The parties agreed that under the terms of the UIM policy, State Farm could deduct the $25,000 that had been paid by Cunningham's insurance as a set off against the UIM award. They disagreed on whether State Farm could deduct $8,271 to offset its earlier PIP payments. State Farm unilaterally offset its PIP payments by paying only $7,000 on the UIM award ($40,271 award, less $25,000 liability limits and $8,271 previous PIP payments).
Winters subsequently sued State Farm for an additional $8,271.86, arguing that State Farm was not entitled to offset the PIP benefits it had paid previously by deducting those payments from her UIM award. Alternatively, she requested that State Farm should be entitled to the offset only if it paid a share of the legal expenses incurred in obtaining the settlement and arbitration award. The parties filed cross motions for summary judgment. The trial court granted State Farm's motion for summary judgment and ordered Winters to pay $2,500 of State Farm's attorney fees. Winters appealed. The Court of Appeals held that State Farm had the right to reduce the underinsured motorist award by the amount it paid in PIP benefits, but under Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632 (1998), that State *1167 Farm must pay a pro rata share of the costs and fees incurred by Winters to recover full compensation for her damages. Winters v. State Farm Mut. Auto. Ins. Co., 99 Wash.App. 602, 616, 994 P.2d 881 (2000). We granted review on the issue of costs and fees.

PERKINS
In May 1995, Kyle Perkins was injured in an automobile accident while driving a vehicle owned by Glenn Smith. Like Winters, Glenn Smith purchased a State Farm automobile policy and paid for separate Liability. UIM and PIP coverages. Smith's policy covered Perkins, who was not at-fault in the accident. Because of his injuries, State Farm paid Perkins $18,480 in PIP benefits.
Perkins settled his claim against the at-fault driver for $25,000, the policy limits of the tortfeasor's liability insurance. The tortfeasor's insurance company, Guaranty National Insurance Co. (Guaranty National), issued two drafts to pay off the judgment: (1) a check for $16,780.14 payable to Perkins, his attorney, and State Farm, and (2) a check for $8,219.86 payable to Perkins, his attorney, and a hospital. The funds for State Farm were held in trust pending the outcome of the UIM case set forth below.
Believing that he had not been fully compensated, Perkins made a claim for UIM benefits from State Farm. An arbitration was held in July 1998. The arbitrator found Perkins had incurred damages totaling $48,000. State Farm tendered Perkins $4,520, representing his $48,000 total damages less credits for a set off of the $25,000 liability limits received from the tortfeasor and for the $18,480 PIP offset for benefits previously paid by State Farm. Perkins rejected the tender, claiming State Farm was required to reduce its PIP offset by one-third to compensate him for a share of his attorney fees pursuant to Mahler, 135 Wash.2d 398, 957 P.2d 632.
Perkins sued State Farm for a declaration that the company was required to contribute toward Perkins's legal costs associated with the recovery of its PIP payments. Both parties filed cross motions for summary judgment and the trial court granted Perkins's motion. State Farm appealed. Division Two of the Court of Appeals certified the case to us after we accepted review in Winters v. State Farm. After we accepted review, we consolidated the two cases.

ISSUE
The only issue presented to this Court is whether a PIP insurer must pay a pro rata share of its insured's attorney fees associated with recovering full compensation from an UIM insurer.

ANALYSIS
For clarity, we will define several terms as they are used in this opinion. First, there are policy provisions that permit an insurer to recover money it has paid to its insured. Traditional "subrogation" is an equitable doctrine involving three parties, permitting one who has paid benefits to one party to collect from another.[2] Here, for example, State Farm attempted to subrogate benefits paid to Winters from the third party, Edalgo. An insurer does not have a right of subrogation against its own insured. Mahler, 135 Wash.2d at 419, 957 P.2d 632 (quoting Stetina v. State Farm Mut. Auto. Ins. Co., 196 Neb. 441, 243 N.W.2d 341, 346 (1976)). Therefore, insurers often have reimbursement provisions within their policies. "Reimbursement" permits an insurer to be reimbursed by its insured from proceeds that the insured collects directly from the party at-fault. In addition, insurers may be entitled to a credit for sums already received by the insured. A "set off," as used in this opinion, refers to sums paid to the insured by another party. Here the parties agree that State Farm was entitled to a set off for the $25,000 that Winters and Perkins each received from the insurers of the at-fault drivers. An "offset" refers to a credit to which an insurer is entitled for payments made under one coverage against claims made under another coverage within the same policy. *1168 Whatever term is used, the insured must be fully compensated before the insurer may recoup benefits paid. Thiringer v. Am. Motors Ins. Co., 91 Wash.2d 215, 219, 588 P.2d 191 (1978); Mahler, 135 Wash.2d at 416-17, 957 P.2d 632.
With these definitions in mind, we will address the questions raised by the parties. We agree with the Court of Appeals on the issues before us and have borrowed liberally from Judge Morgan's opinion. State Farm bases its claim for an offset against its obligation to pay UIM benefits based upon its PIP payments to Winters and Perkins. Paragraph 3 of the Limits of Liability section of State Farm's UIM policies issued to Winters and Perkins contains a "Nonduplication-of-Benefits" clause, which provides:
Any amount paid or payable for damages under the first party benefits [PIP] coverage will not be paid again as damages under this [UIM] coverage. This does not reduce the limits of liability of this coverage.
Winters Clerk's Papers (CP Winters) at 227; Perkins Clerk's Papers (CP Perkins) at 89.
The Nonduplication-of-Benefits clause is neither a subrogation nor a reimbursement clause. The Nonduplication-of-Benefits clause purports to be a limitation of UIM coverage.[3] In Winters, the Court of Appeals upheld State Farm's offset and Winters did not cross appeal. Perkins did not challenge State Farm's Nonduplication-of-Benefits clause. The only issue raised by the parties is whether or not State Farm should pay a pro rata share of the legal cost in proving the medical and other costs included within the PIP offset.
Winters and Perkins contend that even if State Farm has the right to reclaim its PIP payments by offsetting them against their UIM awards, State Farm must pay its "pro rata share of the legal costs and expenses, including attorney's fees, incurred by [them] in the prosecution of [their] liability and UIM claims." Br. of Appellant at 42. This is true, they say, because the arbitration awards "created the common fund from which the [insurer] ... withheld ... its PIP advancements." Id. at 39.
The common fund exception to the no-attorney-fees rule applies to cases where litigants preserve or create a common fund for the benefit of others as well as themselves. Bowles v. Dep't of Ret. Sys., 121 Wash.2d 52, 70-71, 847 P.2d 440 (1993); Pub. Util. Dist. No. 1 v. Kottsick, 86 Wash.2d 388, 390, 545 P.2d 1 (1976). The doctrine provides that "when one person creates or preserves a fund from which another then takes, the two should share, pro rata, the fees and costs reasonably incurred to generate that fund."[4]Winters, 99 Wash.App. at 609, 994 P.2d 881.
Winters points to the considerable expense she incurred to pursue her claim against Cunningham. Cunningham denied liability, and depositions and/or sworn statements were taken from the investigating officer, Cunningham and everyone else (except Edalgo) who was believed to have first-hand knowledge of the event. CP Winters at 159-86. It was not until 27 months post-accident that Leader National abandoned its defenses and agreed to pay Cunningham's $25,000 policy limits.
Perkins points out that when Glen Smith's insurer, Guaranty National, paid Smith's policy limits, it did so with two checks. One of them was payable to both Perkins and State Farm and, pursuant to an agreement with State Farm, $16,780.14 from that check was *1169 placed into a trust account and held subject to a resolution of State Farm's reimbursement claims.
Both Winters and Perkins argue they were forced to bear the expense of a contested arbitration hearing in order to win UIM benefits. It was the resulting UIM awards, they argue, which fully compensated them and created a fund from which State Farm's PIP benefits could be offset.
State Farm, on the other hand, argues that its policy language limits its responsibility to pay a share of legal expenses associated with recovering from the party at-fault. State Farm's policy contains Paragraph 3, "Our Right to Recover Our Payments." Subparagraph d provides in relevant part: "If the insured recovers from the party at-fault and we share in the recovery, we will pay our share of the legal expenses." CP Winters at 238-39; CP Perkins at 100-01. The quoted language simply expresses the long established equitable principles set down by this Court. An insurer is not entitled to recover until its insured is fully compensated and restored to his or her pre-accident position. Thiringer, 91 Wash.2d at 219, 588 P.2d 191. If the insured were forced to pay the costs associated with the insurer's recovery, then the insured would be left less than fully compensated. Mahler, 135 Wash.2d at 425-26 n. 17, 957 P.2d 632.[5]See also Metro. Life Ins. Co. v. Ritz, 70 Wash.2d 317, 322, 422 P.2d 780 (1967); Fisher v. Aldi Tire Inc., 78 Wash.App. 902, 902 P.2d 166 (1995); Pena v. Thorington, 23 Wash.App. 277, 281, 595 P.2d 61 (1979).
This Court has addressed similar issues by analyzing the common fund doctrine. A PIP insured creates a common fund when, after receiving PIP payments, he or she recovers full compensation from the tortfeasor. In Mahler, 135 Wash.2d 398, 957 P.2d 632, the plaintiff sustained $24,000 in damages resulting from an automobile accident for which she was not at-fault. Id. at 406, 957 P.2d 632. After receiving PIP payments of $4,173.32, she recovered the full amount of her damages, $24,000.[6] The PIP insurer then claimed reimbursement of the PIP payment, which would leave the insured fully compensated. Id. The plaintiff agreed on condition that the PIP insurer pay a pro rata share of the legal expenses that she had reasonably incurred to obtain the liability proceeds. Id. at 407, 957 P.2d 632. This Court held that each party benefited from a common fund generated by the plaintiff, so each should pay a pro rata share of the expenses necessary to generate that fund. Id. at 426-27, 957 P.2d 632. See also Peterson v. Safeco Ins. Co., 95 Wash.App. 254, 976 P.2d 632 (1999) (applying the common fund doctrine in another case where the tortfeasor was adequately insured).
In cases where the tortfeasor has adequate insurance, the common fund created by a PIP insured consists entirely of proceeds recovered from the tortfeasor's liability carrier, who stands in the shoes of the tortfeasor. Thus, the payments are treated as if the tortfeasor made them.
On the other hand, when a PIP insured creates a common fund from liability payments and UIM benefits, the common fund combines liability proceeds from the tortfeasor's insurance carrier and UIM proceeds from the insured's underinsured motorist carrier. The UIM payments are treated as if made by the tortfeasor. Jain v. State Farm Mut. Auto. Ins. Co., 130 Wash.2d 688, 695, 926 P.2d 923 (1996). The combination of liability and UIM insurance compensates *1170 claimants for those amounts that they are legally entitled to recover from tortfeasors, up to the total of applicable liability and UIM limits.
The Court of Appeals illustrated this with three examples:
(1) Suppose that a fault-free PIP insured is injured in a two-car accident. She suffers total damages of $40,000. She has PIP and UIM coverages with adequate limits. The other driver is underinsured with liability limits of $25,000. The PIP insurer pays $8,000 in PIP proceeds. The other driver pays his $25,000 liability limits pursuant to settlement or verdict. Because the PIP insured has not received funds in excess of her total damagesshe has received only $33,000 ($8,000 in PIP proceeds and $25,000 in liability proceeds) of the necessary $40,000the PIP insurer is not entitled to reimbursement at all, and there can be no "common fund."
(2) Suppose alternatively that a fault-free PIP insured is injured in a two-car accident. She suffers total damages of $40,000. She has PIP and UIM coverages with adequate limits. The other driver is underinsured with liability limits of only $25,000. The PIP insurer pays $8,000 in PIP proceeds. The PIP insured's carrier pays $15,000 in UIM proceeds ($40,000 total damages less the tortfeasor's liability limits of $25,000). Because the PIP insured has not received funds in excess of her total damagesshe has received only $23,000 ($8,000 in PIP proceeds and $15,000 in UIM proceeds) of the necessary $40,000the PIP insurer is not entitled to reimbursement at all, and there can be no "common fund."
(3) Suppose, again alternatively, that a fault-free PIP insured is injured in a two-car accident. She suffers total damages of $40,000. She has PIP and UIM coverages with adequate limits. The other driver is underinsured with liability limits of only $25,000. The PIP insurer pays $8,000 in PIP proceeds. The other driver pays his liability limits of $25,000. The UIM insurer (who is also the PIP insurer) owes $15,000 in UIM proceeds ($40,000 total damages less the tortfeasor's liability limits of $25,000). Because the PIP insured is now fully compensatedshe has received $48,000 ($8,000 in PIP proceeds, $25,000 in liability proceeds, and $15,000 in UIM proceeds) even though she needs only $40,000 to be fully compensatedthe PIP insurer is entitled to reimbursement; there can be a "common fund" for the first time; and the "common fund" is comprised of the combination of liability proceeds and UIM proceeds.
Winters, 99 Wash.App. at 613-14, 994 P.2d 881.
The next question is whether the entire common fund was created through the efforts of Winters and Perkins. We hold that it was. In each case, the insured secured the proceeds from the at-fault driver or the driver's insurer and then recovered from his or her respective UIM carrier. These pooled funds became the common fund from which the PIP insurer was able to recoup payments it had made. This result provides uniformity among insurers. Winters and Perkins could very well have chosen not to buy PIP coverage and chosen instead to buy medical insurance through a health insurer. If a health insurer had paid the medical bills for Winters and Perkins and had a valid subrogation or reimbursement clause, the health insurer could have asserted a claim for repayment. That claim would have been subject to the equitable requirement that it pay its pro rata share of legal expenses. The fact that the same insurer provides both UIM coverage and medical payment coverage through PIP coverage should not result in the insured's bearing a greater amount of legal expenses.
Once a PIP insured has been fully compensated, the insurer may have a right to be repaid for payments it has made if its policy so provides. Barney v. Safeco Ins. Co. of Am., 73 Wash.App. 426, 432, 869 P.2d 1093 (1994). However, the insurer may not recover before the PIP insured has been fully compensated. Mahler, 135 Wash.2d at 417-18, 436, 957 P.2d 632.
State Farm contends that our result conflicts with the Dayton and Kenworthy cases. Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 876 P.2d 896 (1994); Kenworthy v. Pa. Gen. Ins. Co., 113 Wash.2d 309, 779 P.2d 257 (1989). In those cases, we applied the American rule; generally, each party must bear *1171 his or her own legal expenses. In advancing its argument, State Farm seems to forget that it has written and received premiums for separate and different coverages. In Dayton and Kenworthy, the issue was whether or not a UIM carrier was responsible for paying for its insured's legal expenses in making a UIM claim. The question presented here is totally different: whether or not the PIP carrier should pay a pro rata share of legal expenses for its insured in recovering PIP benefits from an UIM insurer. The insured should not be worse off simply because he or she purchased two coverages from the same insurer.
State Farm argues that our ruling conflicts with Daley, Barcom, and Britton because those cases applied to "wrongdoers." Daley v. Allstate Ins. Co., 135 Wash.2d 777, 958 P.2d 990 (1998); Safeco Ins. Co. v. Barcom, 112 Wash.2d 575, 773 P.2d 56 (1989); Britton v. Safeco Ins. Co. of Am., 104 Wash.2d 518, 707 P.2d 125 (1985). State Farm argues that it should not be punished as a wrongdoer because it has done nothing wrong. We agree that State Farm has done nothing wrong and is not a wrongdoer. However, our cases have been based not upon punishment, but upon the principle that the insured should be fully compensated before the insurer is entitled to reimbursement. Here, both Winters and Perkins were forced to hire attorneys to pursue claims against their respective parties at-fault. After recovering the insurance policy limits of the parties at-fault, neither Winters or Perkins was fully compensated. With assistance of counsel, both filed UIM claims against State Farm. State Farm put both to their proof and both proceeded to arbitration against State Farm where both presented evidence to prove that their medical expenses were reasonable and necessary and related to their motor vehicle collisions. Winters and Perkins each incurred substantial litigation costs to create a common fund for the benefit of their PIP carrier. Neither Winters nor Perkins would be fully compensated if forced to bear the entire litigation costs of the common fund. State Farm is not being cast in the position of the wrongdoer. However, as between the insured and the insurer, we balance their interests and decide that the insurer should pay its share of the costs associated with recovery.
The Court of Appeals is affirmed and these cases are remanded for the trial court to determine State Farm's pro rata share of expenses.
JOHNSON, SANDERS, IRELAND, BRIDGE, and OWENS, JJ., concur.
ALEXANDER, C.J. (dissenting).
The central issue before us is whether an automobile insurer is obligated to pay a portion of the legal expenses an insured incurs in obtaining a settlement from a tortfeasor, when: (1) the settlement is for less than the insured's total damages, and (2) the insurer does not recoup personal injury protection (PIP) benefits it previously paid to the insured, but does, pursuant to its policy with the insured, offset the PIP payments against its underinsured motorist liability. Because the majority concludes that an insurer must pay a pro rata share of its insured's attorney fees in such circumstances, I dissent.
For simplicity sake I will discuss only the facts in the Perkins case. I do so because the two cases before us have similar facts and involve insurance policies with identical language. Kyle Perkins was injured when an automobile he was driving was involved in an accident with another automobile. The accident was the fault of the driver of the other automobile. State Farm was the insurer of the vehicle Perkins was driving. The insurance policy provided Perkins with personal injury protection coverage (PIP) and underinsured motorist coverage (UIM). State Farm paid Perkins $18,480 in PIP benefits. Perkins then settled his claim against the party at fault for $25,000, the tortfeasor's policy limits. Because Perkins did not consider himself fully compensated after reaching the settlement, he filed a UIM claim against State Farm. An arbitrator thereafter determined that Perkins' total damages were $48,000.
The policy at issue provided that State Farm could recover its PIP payments from the insured's recovery, provided the "insured has been fully compensated for the bodily injury, property damage or loss." Clerk's *1172 Papers (CP) at 101. The policy also stated that "[a]ny amount paid or payable for damages under the first party benefits coverage [PIP] will not be paid again as damages under this [UIM] coverage." CP at 89. Finally, it provided that State Farm would pay its share of the legal expenses of obtaining a recovery "[i]f the insured recovers from the party at fault and we share in the recovery." CP at 101.
State Farm tendered $4,520 to Perkins intending to fully discharge its obligation under the policy to pay Perkins for the total damage he had sustained. State Farm computed its obligation by offsetting the sum of the $25,000 policy limits of the tortfeasor and the $18,480 in PIP benefits it previously paid to Perkins against the amount of Perkins' total damages of $48,000. Perkins rejected State Farm's tender, claiming that the insurer was required to reduce the amount of the PIP offset by one-third to compensate him for attorney fees he incurred in recovering the PIP payments.
The majority concludes that State Farm should have to pay a pro rata share of the attorney fees incurred by Perkins and Winters on the basis that the UIM arbitration created a common fund from which State Farm reimbursed itself for the PIP benefits it had paid to the insured. I disagree. I do so because State Farm has never been reimbursed for the PIP benefits it paid to its insureds.
As the majority correctly notes, the common fund doctrine provides that when a person creates or preserves a fund from which another then takes, the two should share, pro rata, the fees and costs reasonably incurred to generate that fund. See Covell v. City of Seattle, 127 Wash.2d 874, 891, 905 P.2d 324 (1995). The settlements with the tortfeasors in the two cases before us did not, however, create or preserve a fund from which State Farm benefited. As noted above, State Farm was not entitled under its policy to recover its PIP payments until its insureds had been fully compensated. A PIP carrier can "recover only the excess which the insured has received from the wrongdoer, remaining after the insured is fully compensated for his loss." Thiringer v. Am. Motors Ins. Co., 91 Wash.2d 215, 219, 588 P.2d 191 (1978). Here, although the insureds were fully compensated after they received their UIM benefits, there was no "excess" from which State Farm could reimburse itself for all or any part of the PIP payments it had previously made. Thus, State Farm did not benefit from the recovery from the underinsured tortfeasors.
The majority contends that the PIP offset served to reimburse State Farm for the PIP payments it had paid. Although State Farm was able to offset the PIP payments it previously paid to Perkins and Winters against its UIM obligation, thus reducing the amount of UIM benefits it had to pay, this cannot be considered a reimbursement. I say that because State Farm has never recovered the PIP benefits it previously paid to Perkins and Winters. Thus, it has not been restored to its pre-accident position. An offset is not a reimbursement nor a recoupment. It simply prevents an insured from receiving a double recovery. In sum, the insurer's offset of the PIP payment against its UIM obligation is not a reimbursement or recoupment of the PIP payment.
The majority relies on Mahler v. Szucs, 135 Wash.2d 398, 957 P.2d 632, 966 P.2d 305 (1998) for the proposition that the common fund doctrine applies in these cases. I disagree. In Mahler, we did not rely upon the common fund doctrine to award fees, but rather focused on a policy provision that was identical to the provision in the policies that are before us in these consolidated cases. Furthermore, the Mahler case is distinguishable in that the injured insureds were each fully compensated by the party at fault. Thus, unlike the circumstances in the instant cases, the insurer received reimbursement for the PIP payments it had made.
In Mahler, this court interpreted an identical State Farm policy provision that required the insurance company to share pro rata the legal expenses of an insured who recovered from the tortfeasor. There, State Farm paid a portion of each injured insured's medical expenses under the PIP coverage. Each insured then sued the tortfeasor and a settlement was reached. The insureds agreed that State Farm should share in the settlement to the extent of the PIP benefits it had paid, provided State Farm shared in the legal *1173 expenses incurred by them in recovering from the tortfeasor. We agreed with the insureds and concluded that State Farm was required under the policy to contribute to each insured's legal expenses if it received reimbursement for its PIP payments.
In my view, the Mahler decision does not control here and applies only in a situation where the insured is fully compensated by the tortfeasor. As I have observed, the insureds in Mahler were fully compensated for their damages from the tortfeasors after their insurer paid them PIP benefits. Because the insureds were fully compensated by the parties at fault and their settlement included the PIP benefits previously paid by their insurer, the PIP carrier in Mahler was entitled to reimbursement for the PIP benefits it had paid to the insureds. This is so because even after the PIP carrier was reimbursed, the insured remained fully compensated. Moreover, the insurer in Mahler was not "out of pocket" anything except for the fees it owed its insureds pursuant to our holding in Mahler.
It is significant also that the insurance policies in question here do not provide that State Farm should have to pay a pro rata share of the insured's legal expenses because State Farm did not, in the words of the contract, "share in the recovery" from the tortfeasor. After all is said and done, State Farm is still "out of pocket" the PIP payments it made to Perkins and Winters. It has never recovered that money. Although in each of the cases before us, State Farm offset its PIP payment against its UIM obligation, that is permissible under the insurance contract provided that the insured is "fully compensated." This is because the policies provide that the UIM coverage would not pay twice for any amount it paid under the PIP coverage. If State Farm had not been allowed to offset the PIP payment against the UIM obligation, the insured would have received a double recovery.
While the policy language before us here states that State Farm is "to be repaid our [PIP] payments ... out of any recovery[,]" that "right to recover our [State Farm] payments applies only after the insured has been fully compensated for the bodily injury, property damage or loss." CP at 101. In construing identical policy language in Mahler, we stated, "This policy language reflects our rule requiring full compensation to insureds before an insurer becomes entitled to reimbursement for a loss." Mahler, 135 Wash.2d at 421 n. 11, 957 P.2d 632. It is clear that the policy language only requires State Farm to share the insured's legal expenses if State Farm actually shares in the insured's recovery from the party at fault.
Arguably, under the majority's approach, anytime an insurer reduces its UIM payment to offset its prior PIP payments, the insurer will have to pay a share of attorney fees on the basis that it has "shared in the recovery." The more reasonable interpretation of the insurance policies in question here is that State Farm is required to pay a pro rata share of the attorney fees only when the insured receives full compensation from the tortfeasor which reimburses the insurer.
My view that State Farm should not have to pay a portion of the insured's legal expenses appears consistent with our cases holding that an insured must bear her own legal expenses for a UIM arbitration. See Dayton v. Farmers Ins. Group, 124 Wash.2d 277, 281, 876 P.2d 896 (1994), a case in which we were presented with the question of whether attorney fees are recoverable in a UIM arbitration to determine the amount of damages. In answering this question in the negative, we reasoned:
When a tortfeasor carries insurance, the claimant insured bears his or her own attorney fees in the arbitration proceedings. Thus, when the UIM insurer stands in the shoes of the uninsured tortfeasor, the claimant insured should likewise bear his or her own attorney fees. Recovery of attorney fees in a UIM arbitration constitutes an amount greater than that available from an insured tortfeasor. This is not consistent with the purpose of UIM insurance, or the statutes governing UIM coverage.
Id. at 281, 876 P.2d 896 (citation omitted).
Dayton appears to control the similar scenario that is presented in these cases and answers the majority's public policy concerns that insureds would not receive full compensation under UIM coverage if they were responsible for paying legal costs. As the *1174 majority observes, we follow the American rule in awarding attorney fees. Under that rule, a court has no power to award attorney fees as a cost of litigation in the absence of contract, statute, or recognized ground of equity providing for fee recovery. State ex rel. Macri v. City of Bremerton, 8 Wash.2d 93, 113-14, 111 P.2d 612 (1941). The UIM and PIP statutes do not, in my judgment, authorize an award of attorney fees. Neither are fees available under the provisions of the policies at issue here or under the common fund doctrine. There is in the final analysis no legal basis for requiring State Farm to pay a pro rata share of Winters' and Perkins' legal expenses.
In sum, I would hold that because State Farm never recovered its PIP payments, it is not required to pay a pro rata share of the legal costs Winters and Perkins incurred in reaching settlements with their tortfeasors. I would, therefore, reverse the Court of Appeals. Accordingly, I respectfully dissent.
SMITH and MADSEN, JJ., concur.
NOTES
[1] Total judgment, including interest and fees, amounted to $11,851.27. The record does not indicate whether this amount has been paid.
[2] "The right to subrogation exists when a party, not a volunteer, pays another's obligation for which the subrogee has no primary liability in order to protect such subrogee's own rights and interests. The right of subrogation is based on equity and will be protected only when justice so requires." Millers Cas. Ins. Co. v. Briggs, 100 Wash.2d 9, 13-14, 665 P.2d 887 (1983).
[3] Amicus Curiae Washington State Trial Lawyers Association argues that the Nonduplication of Benefits clause is impermissible under RCW 48.22.030, which requires insurers to provide UIM coverage for damages the covered person is legally entitled to recover. State Farm correctly points out that this argument was not raised below and we therefore do not reach this argument.
[4] Covell v. City of Seattle, 127 Wash.2d 874, 891, 905 P.2d 324 (1995); Bowles v. Department of Retirement Sys., 121 Wash.2d 52, 70-71, 847 P.2d 440 (1993); Leischner v. Alldridge, 114 Wash.2d 753, 756-57, 790 P.2d 1234 (1990); Miotke v. City of Spokane, 101 Wash.2d 307, 339, 678 P.2d 803 (1984) (quoting Public Util. Dist. No. 1 v. Kottsick, 86 Wash.2d 388, 390-91, 545 P.2d 1 (1976)); Painting & Decorating Contractors, Inc. v. Ellensburg Sch. Dist., 96 Wash.2d 806, 815, 638 P.2d 1220 (1982); Seattle Trust & Sav. Bank v. McCarthy, 94 Wash.2d 605, 612, 617 P.2d 1023 (1980).

Winters, 99 Wash.App. at 609 n. 20, 994 P.2d 881.
[5] The Mahler court also noted that according to general principles of equity,

[i]t is grossly inequitable to expect an insured, or other claimant, in the process of protecting his own interest, to protect those of the [insurer] as well and still pay counsel for his labors out of his own pocket, or out of the proceeds of the remaining funds. And this is precisely the view taken by the overwhelming majority of decisions, in that a proportionate share of fees and expenses must be paid by the insurer or may be withheld from its share. Mahler, 135 Wash.2d at 425-26 n. 17, 957 P.2d 632 (quoting 8A JOHN A. APPLEMAN & JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 4903.85 at 335 (1981)); see also Peterson v. Safeco Ins. Co., 95 Wash.App. 254, 264, 976 P.2d 632 (1999).
Winters, 99 Wash.App. at 610 n. 25, 994 P.2d 881.
[6] Mahler settled for either $24,250 (Mahler, 135 Wash.2d at 406, 957 P.2d 632) or $24,500 (id. at 408 n. 2, 957 P.2d 632). For convenience, we rounded off to $24,000. See Winters, 99 Wash.App. at 609 n. 22, 994 P.2d 881.